1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY ANDRE SHARP,                 Case No.  1:19-cv-01241-HBK (HC)

12              Petitioner,                FINDINGS AND RECOMMENDATIONS TO
                                           DENY AMENDED PETITION FOR WRIT OF
13        v.                               HABEAS CORPUS AND TO DECLINE TO
                                           ISSUE A CERTIFICATE OF
14   CRAIG KOENIG,                         APPEALABILITY[1]

15              Respondent.                FOURTEEN-DAY OBJECTION PERIOD

16                                         (Doc. No. 9)

17                                         ORDER DIRECTING CLERK OF COURT TO
                                           ASSIGN DISTRICT JUDGE
18

19

20        Petitioner Anthony Andre Sharp ("Petitioner" or "Sharp"), an inmate incarcerated within

21   the California Department of Corrections and Rehabilitation, proceeds on his pro se amended

22   petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. No. 9, "Petition").  The

23   Petition challenges Sharp's November 29, 2016 conviction and indeterminate term of 25 years to

24   life sentence for possession of child pornography entered by the Fresno Superior Court.  (*Id*. at 1,

25   Doc. No. 19  at 5).  For the reasons set forth below, the undersigned recommends the district

26   court deny the Petition, as amended, and decline to issue a certificate of appealability.

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

# I. BACKGROUND

## A. Procedural History

Petitioner initiated this case on September 6, 2019 by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. No. 1).  Petitioner was granted leave and filed an amended petition on February 18, 2020.  (Doc. No. 9).  The Petition, as amended, identifies five grounds for relief: (1) Petitioner's current sentence enhanced under California's Three Strikes Law is "illegal" because his prior offenses occurred before the Three Strikes Law was enacted in 1994; (2) Petitioner was denied "due process" and "equal protection" because the state court denied his *Romero* motion without affording Petitioner a hearing; (3) Petitioner was subjected to "criminal fraud" and his Sixth Amendment rights were violated because the District Attorney does not represent "the People in criminal cases"; (4) Petitioner's *Boykin-Tahl* rights were violated; and (5) Petitioner's sentence is illegal due to cumulative error of grounds 1-4.  (*Id*. at 1-13).  Also, in his memorandum in support of the Petition, Petitioner peripherally challenges his three earlier state convictions on the basis that his guilty pleas were unknowing and involuntary.  (*Id*. at 14).

On September 18, 2020, Respondent filed an answer to the petition and lodged the pertinent state court record in support.  (Doc. Nos. 19-20).  On October 15, 2020, Petitioner filed a reply.  (Doc. 22).  On November 17, 2020, the case was reassigned to the undersigned.  (Doc. No. 23).

## B. Facts Based Upon the Record

Petitioner admits that he had the following expired plea-based state court convictions:  an October 24, 1986 conviction out of San Diego County for lewd and lascivious on a child under the age of 14 for which he was sentenced to 3 years and served 1 ½ years; an August 11, 1988 conviction out of San Diego County for lewd and lascivious on a child under the age of 14 for which he was sentenced to 8 years and served 4 years; and a March 3, 1997 conviction out of San Diego County for lewd and lascivious on a child under the age of 14 for which he was sentenced to 16 years and paroled after serving 14 years.  (Doc. No. 9 at 14).  At the time of his 2016 offense, Petitioner was civilly committed to Coalinga State Hospital as a sexually violent predator.  (Doc. No. 20-33 at 1).  While at Coalinga State Hospital, Petitioner was charged with

possession of child pornography in violation of Penal Code section 311.11, subdivision (a).

To put Petitioner's arguments in context, the undersigned includes a brief summary of relevant trial evidence here.  During a routine search of a dormitory, officers noticed Petitioner acting nervously and observed him remove a disc he was watching on his DVD player.  (Doc. No. 20-3 at 37-40, 84-85).  He was also observed trying to hide three discs that he had in his possession.  (*Id*. at 39, 85-86).  Petitioner and an officer engaged in tug-of-war before Petitioner relinquished the DVDs.  (*Id*. at 46, 51, 53, 86, 96).  Petitioner was interviewed multiple times and gave conflicting statements. (*See* Doc. No. 20-3 at 107-11; Doc. No. 20-4 at 61-75, 174-78). Ultimately, Petitioner admitted the DVDs contained inappropriate material and offered to become a confidential informant.  (Doc. No. 20-4 at 32-33, 63-64).  Officers reviewed the DVD and found approximately 234 images of child pornography on a DVD that Petitioner had in his possession. (*Id*. at 81-89).  After hearing the evidence, a jury found Petitioner guilty of possession of child pornography.  (*Id*. at 198-200).  Petitioner waived his right to a jury trial on his priors.  (*Id*. at 148; Doc. No. 20-2 at 20).  In a bifurcated hearing, the trial court heard arguments on Petitioner's *Romero* motion, and Petitioner addressed the court.  (Doc. No. 20-5 at 5-10).  The trial court found Petitioner was not suitable for relief under *Romero*, and found Petitioner had three prior serious felonies.  (*Id*. at 11-12).  Accordingly, Petitioner was sentenced to an indeterminate state prison term of twenty-five years to life.  (*Id*. at 12).

## II.  APPLICABLE LAW

### A.  AEDPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016).  This deferential standard, set forth in § 2254(d), permits

relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy.

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision.  *White*, 572 U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362, 407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting

4

the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

As discussed earlier, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court.  An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S. at 98.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id*. at 99.  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id*. at 99-100.  This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others.  *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard.  When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.  But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do."  *Id*. at 1196.

> When . . . there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

1    decision of this Court." *Richter*, 562 U.S. at 102.  If such
2    disagreement is possible, then the petitioner's claim must be denied.
     *Ibid.*

3    *Sexton*, 138 S. Ct. at 2558.

4                              **III.  ANALYSIS**

5         On July 20, 2017, the California Court of Appeal dismissed Petitioner's direct appeal at

6    his request.  (Doc Nos. 20-6, 20-7).  Thereafter, Petitioner proceeded to file 15 state habeas

7    petitions between 2017 and 2020.  (*See* Doc. Nos. 20-8–20-37).  Respondent avers that the federal

8    Petition "appears" untimely; however, because the Court can more easily consider the Petition on

9    the merits than determine timeliness, Respondent requests that the Court "bypass the procedural

10   issue, and deny the petition on the merits."  (Doc. No. 19 at 7-8).

11        Having reviewed the record, the undersigned finds the interests of judicial economy

12   warrant the Court proceeding to an evaluation of the merits of Petition.  *See Flournoy v. Small*,

13   681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar

14   prior to any consideration of the merits on habeas review, we are not required to do so when a

15   petition clearly fails on the merits."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002)

16   ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if

17   they are ... clearly not meritorious despite an asserted procedural bar."); *see also Lambrix v.*

18   *Singletary*, 520 U.S. 518, 525 (1997) (noting that, in the interest of judicial economy, courts may

19   resolve easier matters where complicated procedural default issues exist).

20        **A.  Ground One: Three Strikes Law**

21             **1.  Background**

22        Petitioner argues that his past three strike offenses ( 1986 and 1988 noted *supra*) cannot be

23   used as strikes to enhance his sentence for the 2016 possession of child pornography offense,

24   because these prior offenses occurred before the enactment of the Three Strikes law in 1994.

25   (Doc. No. 9 at 7).  Petitioner contends that the Three Strikes Law, "as it was written and passed

26   did not say any priors before 1994 would be considered . . . . To be exact the enacted law clearly

27   states on or after [March] 7th, 1994 would be a strike.  A strike prior to this law passing cannot be

28   used as a strike for any reason if no such law existed in the 80's to use a strike from that decade

                                            6

1   where it did not exist is illegal and unconstitutional . . . ." (*Id.*).

2        Petitioner raised this claim in a state habeas petition, and the state superior court denied

3   the claim citing to California law because "the three strikes law does apply to convictions that

4   predate its enactment." (Doc. No. 20-23 at 2). The state superior court also found that the three

5   strikes law did not violate the Double Jeopardy Clause noting "[r]recidivist statues do not impose

6   second punishment for the fist offense in violation of the Double Jeopardy Clause." (*Id.* citing

7   *People v. White Eagle* (1996) 48 Cal. App. 4th 1511, 1520. The California Supreme Court

8   summarily denied the claim. (Doc. No. 20-31).

9            **2. Petitioner is Not Entitled to Relief on Ground One**

10        To the extent Petitioner claims that the state court made an error in its determination of

11   state law, this claim is not cognizable on habeas review. Federal habeas corpus relief "does not

12   lie for errors of state law," *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), and this court is bound by

13   the state court's determination based on state law, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

14   (per curiam) ("[A] state court's interpretation of state law, including one announced on direct

15   appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Petitioner's

16   claim that the trial court misapplied the California Three Strikes Law is no exception; it does not

17   give rise to any alleged violation of the Constitution or the laws of the United States. *See Aponte*

18   *v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) ("We are bound by a state court's construction of its

19   own penal statutes."); *Zaragoza v. Lamarque*, 145 F. App'x 572, 573 (9th Cir. 2005) (holding that

20   whether a prior conviction was a serious felony under California's Three Strikes law was "an

21   issue of state law and as such is generally not cognizable on federal habeas review").

22        The Court notes that in rare circumstances, a misapplication of state sentencing law can be

23   "so arbitrary or capricious as to constitute an independent due process" violation. *Richmond v.*

24   *Lewis*, 506 U.S. 40, 50 (1992). However, Petitioner has not alleged facts or made argument that

25   could establish those circumstances here; and, as correctly recognized by Respondent, the

26   Supreme Court and the Ninth Circuit have "uniformly held" that recidivist statutes, such as the

27   Three Strikes Law at issue here, do not violate the Ex Post Facto Clause or Double Jeopardy

28   Clause if they are "on the books at the time the [present] offense was committed." (Doc. No. 19

1  at 9) (citing *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999)); *Parke v. Raley*, 506

2  U.S. 20, 27 (1992); *Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other*

3  *grounds*, 538 U.S. 901 (2003) (rejecting argument that Three Strikes Law violated Ex Post Facto

4  Clause because the law "count[s] as strikes offenses committed prior to Three Strikes'

5  enactment"); *Crawford v. Robertson*, 2019 WL 5460206, at *23-24 (C.D. Cal. Sept. 4, 2019)

6  (Petitioner's ex post facto argument is "meritless" because the Three Strikes Law was "on the

7  books" at the time petitioner committed the instant offense); *Beckwith v. Rackley*, 2018 WL

8  1684338, at *10 (C.D. Cal. Jan. 18, 2018) (because the petitioner's instant conviction occurred

9  after enactment of the Three Strikes Law, petitioner's Three Strikes sentence did not violate the

10  Ex Post Facto Clause).

11        Because the superior court's rejection of Petitioner's ex post facto claim was not an

12  unreasonable application of clearly established federal law as set forth by the Supreme Court nor

13  based on an unreasonable determination of the facts, Petitioner is not entitled to relief on ground

14  one.

15        **B.  Ground Two: Hearing on *Romero* Motion**

16            **1.  Background**

17        In his second ground, Petitioner claims that his due process and equal protection rights

18  were violated because he was denied a hearing on his *Romero* motion.  (Doc. No. 9 at 8).

19  California trial courts have the discretion to dismiss prior strikes in the interest of justice under

20  California Penal Code section 1385(a).  When ruling on a *Romero* motion, a trial court considers:

21                whether, in light of the nature and circumstances of his present
                felonies and prior serious and/or violent felony convictions, and the
22                particulars of his background, character, and prospects, the
                defendant may be deemed outside the spirit [of California's Three
23                Strikes law], in whole or in part, and hence should be treated as
                though he had not previously been convicted of one or more serious
24                and/or violent felonies.

25  *People v. Williams*, 17 Cal. 4th 148, 150 (1998).

26        The record reveals that prior to sentencing, Petitioner filed a *Romero* motion seeking to

27  strike his prior convictions based on, among other things, their age, the fact that they were not

28  violent felonies, and several alleged mitigating facts, including Petitioner was 20 years old at the

8

1  time of his first strike, he has not suffered a serious strike offense during the last 20 years, and his

2  current offense shows a "decrease in criminality."  (Doc. No. 20-24, Ex. 3).  Contrary to

3  Petitioner's claim, the trial court considered Petitioner's *Romero* motion at a hearing held on

4  November 29, 2016.  At the hearing, the prosecution opposed the *Romero* motion, arguing that

5  the reason Petitioner had not committed the same types of offenses in the past 20 years is because

6  he has been incarcerated the entire time, it is not a victimless crime, and there is no evidence in

7  the record that defendant can be rehabilitated.  (Doc. No. 20-5 at 5-6).  Petitioner was granted

8  leave to address the court directly, whereupon he argued he has made "significant" improvement

9  at hospital in-treatment despite being abused and molested as a child, he now only associates with

10  people that assist in his recovery, and he "took responsibility" for his past crimes.  (Doc. No. 20-5

11  at 8-10).  The trial court specifically noted that the images possessed by Petitioner as "some of the

12  most disturbing pornography one could imagine," and the court had no information that his prior

13  convictions were "less serious than other crimes of similar types."  (*Id*. at 11-12).  After hearing

14  argument from the parties, including the Petitioner, the trial court found Petitioner was not

15  suitable for relief under *Romero*, and "it would be an inappropriate exercise of the court's

16  discretion to strike two of his three strikes to make him ineligible for something less than the 25

17  to life indeterminate sentence provided by the Code."  (*Id*. at 12).

18        The California appellate court summarily denied this claim, noting "any further petition

19  for relief should present adequate factual and documentary evidence to support petitioner's

20  claims, and petitioner should provide a reasonable explanation why such claims could not have

21  been presented on appeal or in an earlier writ petition."  (Doc. No. 20-25).

22        **2. Petitioner is Not Entitled to Relief on Ground Two**

23        As pointed out by Respondent, Petitioner provides no basis to support his claim that he

24  was denied due process and equal protection because the trial court "failed to read the motion or

25  have a hearing on it before making a decision."  (Doc. No. 19 at 9).  The record demonstrates

26  Petitioner's counsel filed a *Romero* motion, the motion was discussed during the bifurcated

27  hearing, and Petitioner had an opportunity to testify prior to the trial judge finding Petitioner was

28  not suitable for relief under *Romero*.  Thus, Petitioner's claim that his constitutional rights were

9

violated based on a failure to grant a hearing or consider his *Romero* motion is refuted by the record.

Moreover, even were the Court to consider Petitioner's claim that his federal constitutional rights were somehow violated by the state court's denial of his *Romero* motion, as stated *supra*, federal habeas corpus relief "does not lie for errors of state law," *Estelle*, 502 U.S. at 67, and this court is bound by the state court's determination based on state law, *Bradshaw*, 546 U.S. at 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Generally, sentencing errors fails to present a cognizable federal habeas claim because they involve solely the interpretation and application of state sentencing law. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."); *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (holding that a claim that the trial court misapplied section 654 of the California Penal Code at sentencing was not cognizable in a federal habeas corpus petition).

Thus, to the extent Petitioner contends that the trial court abused its discretion under state law in considering the *Romero* motion at the sentencing phase of trial, his claim does not involve an alleged deprivation of a federally protected right. *See Brown*, 283 F.3d at 1040 (challenge to denial of *Romero* motion constitutes a state law claim that is not cognizable in a federal habeas corpus action), *vacated on other grounds*, *Mayle v. Brown*, 538 U.S. 901 (2003); *Covarrubias v. Montgomery*, 2021 WL 5990196, at *13 (C.D. Cal. Sept. 10, 2021) ("to the extent Petitioner contends that the trial court abused its discretion under state law when adjudicating his Romero motion, his claim is not cognizable in a federal habeas corpus action."). Nor can Petitioner refashion his state claim into a federal one simply by casting it as a due process or equal protection violation. *See Langford*, 110 F.3d at 1389. "Petitioner has identified no due process precedent of the U.S. Supreme Court that would be implicated by the wrongful denial of a *Romero* motion, nor is the undersigned aware of any." *Blair v. Price*, 2020 WL 3574269, at *7

1   (E.D. Cal. July 1, 2020).

2        The misapplication of state law may rise to the level of a due process violation if a

3   petitioner demonstrates the sentencing error was "so arbitrary and capricious as to constitute an

4   independent due process" violation.  *See Richmond*, 506 U.S. at 50.  Here, Petitioner alleges no

5   facts or makes no argument to establish those circumstances here.  Instead, the record here

6   reflects that the trial court carefully considered the facts and arguments and properly applied state

7   law to conclude it was not appropriate to strike Petitioner's prior convictions.  Thus, there is no

8   basis to conclude that denial of Petitioner's *Romero* motion, after a properly conducted hearing,

9   was in error, "let alone so arbitrary and capricious as to constitute an independent due process

10  violation." *Norwood v. Baughman*, 2020 WL 2476432, at *6 (C.D. Cal. Apr. 2, 2020) (where

11  trial court considered factors relevant to *Romero* motion to strike prior conviction under state law,

12  "the Court cannot conclude that the trial court's denial of Petitioner's *Romero* motion was error").

13       Because the state court's decision was not contrary to, nor an unreasonable application of,

14  clearly established Supreme Court precedent, and it was not an unreasonable determination of the

15  facts in light of the evidence presented, and indeed is factually refuted by the record, ground two

16  of the Petition, as amended, should be denied.

17       **C.  Ground Three: Criminal Fraud/ Sixth Amendment Violation**

18            **1.  Background**

19       In his third ground, Petitioner accuses the state of California and the district attorney's

20  office as having "committed a federal violation of criminal fraud in a judiciary proceeding which

21  leads to an illegal sentence" because "when a deputy district attorney appears in Court for

22  arraignment they state their name and state representing the people that is an act of fraud."  (Doc.

23  No. 9 at 9).  Petitioner also asserts his Sixth Amendment rights "were violated as [there] is no

24  way petitioner could reasonably face or cross-exam[ine] 20 million victims because once the

25  prosecutor states on the record he or she represents the people that become an [sic] legal

26  statement they are representing every citizen in the state instead of one individual victim." (*Id.* at

27  11).

28  ////

**2. Petitioner is Not Entitled to Relief on Ground Three**

The undersigned finds Petitioner's third ground completely meritless and frivolous. The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *See Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989) (a claim is legally frivolous when it lacks an arguable basis in either law or fact); *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) (summary dismissal is appropriate only where the allegations in the petition are vague or conclusory, palpably incredible, or patently frivolous or false). The Advisory Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

This claim does not set forth a meritorious legal theory. California Penal Code § 684 expressly requires criminal actions to be prosecuted in the name of the People. Petitioner presents no legal authority for the proposition that Cal. Penal Code § 684 perpetuates some form of criminal fraud, or deprives criminal defendants of any rights, including cross-examination of accusing witnesses or victims. Moreover, to the extent that the claims can be said to allege any "facts," those facts are irrelevant to any conceivable basis for habeas relief. Ground three has no arguable basis in law or fact and should be denied as frivolous.

**D. Ground Four: *Boykin/Tahl* Rights**

**1. Background**

In his fourth ground, Petitioner claims that "a defendant has a right to be informed of their *Boykin-Tahl* rights and what it means and to make sure they fully understand by admitting to any past priors or taking a plea as to any priors, a defendant must be properly informed"; and his "*Boykin-Tahl* rights were violated when [P]etitioner was not informed of such rights." (Doc. No. 9 at 12). As noted in the trial transcript, defense counsel requested off the record to bifurcate the hearing on the priors. (Doc. No. 20-2 at 20). The trial judge confirmed on the record that the issue of whether Petitioner suffered from prior convictions could be tried to the court or admitted, but the jury would not decide the issue as there was a waiver of a jury trial on his priors. (*Id*.).

////

**2. Petitioner is Not Entitled to Relief on Ground Four**

Under *Boykin*, a conviction may be unconstitutional if the defendant pled guilty without waiving: (1) the right to a jury trial; (2) the right to confront adverse witnesses; and (3) advised of the privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238 (1969); *In re Tahl*, 460 P.2d 449 (1969) (holding the same three rights must be specifically and expressly enumerated and waived by the accused prior to acceptance of a guilty plea). It is somewhat unclear whether Petitioner is claiming a violation of his *Boykin-Tahl* rights based on an alleged failure by the trial court in the instant case to inform him of those rights as to his admission of prior convictions; or whether he claims his sentence was impermissibly enhanced by unconstitutional prior convictions because he was not informed of his rights at the time of those plea-based convictions in 1986, 1988, and 1997. (*See* Doc. No. 9 at 12-15). Regardless, both arguments are unavailing.

Concerning his 2016 conviction, Petitioner offers no evidence that he was not advised of his right under California law to a jury trial on his priors before he waived the right; and, as noted by Respondent, the issue was not preserved on appeal as Petitioner dismissed his direct appeal. The record evidences the trial judge confirmed on the record that there was a waiver of a jury trial as to whether Petitioner suffered the prior convictions. (Doc. No. 20-2 at 20). Moreover, regardless of any waiver, the United States Supreme Court has not yet decided whether the procedural protections of *Boykin* extend varied trial rights to a defendant as to prior convictions. (Doc. No. 19 at 10); *see Adams v. Peterson*, 968 F.2d 835, 841 n.4 (9th Cir. 1992) (recognizing the circuits are split on this issue and agreeing that only the trial court need determine whether the defendant knowingly and voluntarily agreed to the stipulation of the fact of a prior conviction); *Dombrowski v. Mingo*, 543 F.3d 1270, 1276 (11th Cir. 2008) (noting there is no clearly established Supreme Court precedent requiring sentencing courts to either determine that a defendant knows and understands the consequences of his admission to prior convictions for sentence enhancement purposes); *Davis v. Johnson*, 2020 WL 3980115, at *6 (C.D. Cal. May 28, 2020) ("The rule in *Boykin*, however, does not extend the same constitutional protection to criminal defendants who may face sentencing enhancements after admitting to prior convictions). Thus, to the extent Petitioner is arguing that he was not advised of his rights before admitting his

13

prior convictions, the Court has no basis to conclude that any alleged violation of this right by the trial court was either contrary to or an unreasonable application of clearly established Supreme Court law.

Additionally, Petitioner peripherally argues his expired state-court plea based conviction are illegal as his pleas were not knowing and voluntary.  To the extent Petitioner argues that his current sentence was enhanced on the basis of allegedly unconstitutional prior convictions in 1986, 1988, and 1997 due to inadequate *Boykin/Tahl* admonitions, he also fails to state a cognizable claim for relief.  (*See* Doc. No. 9 at 14-15, 19 ("Petitioner contends that his 1986, 88, and 97 pleas are void based on [sic] it violates petitioner's due process rights and petitioner could not and did not make an intelligent and voluntary plea agreement.")).  In *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394 (2001), the United States Supreme Court considered whether a § 2254 habeas prisoner could collaterally attack an earlier state conviction used to enhance a sentence for a later state conviction.  The Court held:

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id*. at 403-04 (internal citations omitted).  Based on the record before the Court, Petitioner's 1986, 1988, and 1997 convictions are no longer open to direct or collateral attack in state court.  Petitioner does not offer, nor does the Court discern, any evidence that Petitioner filed a direct appeal of these convictions, all of which are more than twenty years old.  The Court notes an exception to *Lackawanna* may exist where (1) in violation of the Sixth Amendment, a court failed to appoint counsel in the prior proceeding, or (2) defendant obtains compelling evidence that he is actually innocent of the crime for which he was convicted, and could not have uncovered such evidence in a timely manner.  *Id*. at 404-05; *see also Custis v. United States*, 511 U.S. 485, 492-93 (1994) (with the exception of convictions obtained in violation of the right to counsel, a defendant has no constitutional right to collaterally attack the validity of previous state

convictions that are used to enhance his federal sentence under the ACCA).  Petitioner's challenge fails to satisfy either of these criteria.  He acknowledges that he was afforded a public defender in all of his prior cases; and there is no indication that the court refused to rule on Petitioner's properly presented challenge to a prior conviction, or that he uncovered new "compelling evidence" of innocence that could not have been timely discovered.  (*See* Doc. No. 9 at 14-15).  Accordingly, to the extent Petitioner is seeking review of his prior plea-based convictions, he is not entitled to federal habeas relief.  *See Diaz v. Biter*, 2015 WL 2159478, at *3 (E.D. Cal. May 7, 2015) ("A Petitioner cannot simply revisit prior state court convictions ad infinitum whenever he runs afoul of the law and his prior convictions are used to enhance his later sentence.").  Furthermore, Petitioner is no longer in custody on these prior convictions for purposes of habeas relief, even if they were used to enhance his current sentence.  *Alaska v. Wright*, 141 S.Ct. 1467, 1468 (2021) (a habeas petition is no longer "in custody" on an expired conviction merely because it may, and did, enhance the sentence for a subsequent crime).  Thus, Petitioner cannot challenge these earlier expired state plea-based convictions.

Because the state court's decision was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and it was not an unreasonable determination of the facts in light of the evidence presented, ground four should be denied.

### D.  Ground Five: Cumulative Error

#### 1.  Background

As his fifth and final ground, Petitioner reiterates "he is being imprisoned wrongly due to an illegal sentence he was given based on grounds 1 through 5 which are inclusive." (Doc. No. 9 at 13).  Liberally construed, Petitioner argues that the cumulative effect of the each of the aforementioned grounds warrants habeas relief.

#### 2.  Petitioner is Not Entitled to Relief on Ground Five

"Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still prejudice[d] a defendant." *Cook v. Kernan*, 801 F. App'x 474, 477 (9th Cir. 2020)(internal quotations and citations omitted).  The cumulative error, however, "must render the trial and

1    sentencing fundamentally unfair." *Id.* (citations omitted).  Absent a finding of error of the

2    preceding grounds, the court cannot find cumulative error.  Because the undersigned finds no

3    alleged errors by the trial court and no merit to grounds one-four, the undersigned concludes

4    Petitioner cannot show his conviction and sentencing was fundamentally unfair.  Thus, ground

5    five is without merit and should be denied.

6                                    **IV.  CERTIFICATE OF APPEALABIILTY**

7            A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

8    court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253;

9    *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing § 2254 Cases requires a

10   district court to issue or deny a certificate of appealability when entering a final order adverse to a

11   petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th

12   Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial

13   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires

14   the petitioner to show that "jurists of reason could disagree with the district court's resolution of

15   his constitutional claims or that jurists could conclude the issues presented are adequate to

16   deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v.*

17   *McDaniel*, 529 U.S. 473, 484 (2000).  Here, petitioner has not made a substantial showing of the

18   denial of a constitutional right.  Thus, the undersigned recommends that the court decline to issue

19   a certificate of appealability.

20           Accordingly, it is **ORDERED**:

21           The Clerk of Court is directed shall assign this case to a district judge for the purposes of

22   reviewing these findings and recommendations.

23           Further, it is **RECOMMENDED**:

24               1.  Petitioner be denied all relief on his amended petition.  (Doc. No. 9).

25               2.  Petitioner be denied a certificate of appealability.

26                                        **NOTICE TO PARTIES**

27           These findings and recommendations will be submitted to the United States district judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

                                                      16

days after being served with these findings and recommendations, a party may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."  Parties are advised that failure to file objections within the

specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:    August 30, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17